# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION,** ) ) ) | |
| **Plaintiff,** ) ) | |
| vs. ) ) ) | Civil Action Number **5:19-cv-00247-AKK** |
| **CHOICE MEDICINE: HWY 53 MEDICAL CENTER AND ASHER A. TURNEY,** ) ) ) ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This breach of contract action arises from a loan Wells Fargo Bank, National Association extended to Choice Medicine: Hwy 53 Medical Center and a guaranty executed by Asher A. Turney, Choice Medicine's CEO, to help secure the loan. Doc. 1. After Choice Medicine defaulted on its obligations, Wells Fargo demanded payment from Choice Medicine and Turney, and then filed this lawsuit when the defendants did not pay the amount due under the loan. Before the court is Wells Fargo's motion for summary judgment on its claims against Turney. Doc. 25. Because Turney has not shown a question of fact regarding the elements of Wells Fargo's breach of contract claim, Wells Fargo is entitled to a judgment in its favor of $107,835.50, plus post-judgment interest, costs, and reasonable attorneys' fees.

## I.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version

of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.

Wells Fargo extended a loan with a revolving credit line to Choice Medicine, as evidenced by a Business Lending Confirmation Letter dated February 15, 2016 (the "Loan"). Doc. 26-1 at 3, 9-13. As an inducement for Wells Fargo to make the Loan, Turney signed a Commercial Guaranty dated April 9, 2016, which guaranteed payment of the Loan and all obligations due under the Loan. *Id.* at 4, 47. Pursuant to the express terms of the Guaranty, Turney agreed to be bound by the Guaranty and the Wells Fargo Business Lending Disclosure, which provides in part that "[i]n addition to being liable for the Guaranteed Indebtedness, Guarantor agrees to pay

upon demand all of [Wells Fargo's] costs and expenses incurred in connection with the enforcement of [Wells Fargo's] rights under the Guaranty . . . ." *Id.* at 33, 47.

Choice Medicine defaulted on its obligations to make payments as required under the Loan. Doc. 26-1 at 5; *see also* doc. 21. Wells Fargo sent a written notice of default and a demand for payment to Choice Medicine and Turney on January 8, 2019. Doc. 26-1 at 5, 49-50. Wells Fargo subsequently filed this action, asserting breach of contract and unjust enrichment claims against Choice Medicine and Turney, and seeking damages for the principal due under the Loan, accrued interest, and the costs of collection, including Wells Fargo's attorneys' fees and expenses. Docs. 1; 26-1 at 5.[1]

### III.

Wells Fargo asks the court to enter summary judgment on its claims against Turney and to award it damages for the full amount due under the Loan, plus pre- and post-judgment interest, attorney's fees and costs. Docs. 25; 26.[2] To prevail on its breach of contract claim, Wells Fargo must prove (1) the existence of a valid contract binding the parties, (2) Wells Fargo's own performance under the contract,

---

[1] Choice Medicine failed to respond to Wells Fargo's complaint, and Wells Fargo obtained a default judgment against Choice Medicine for $98,222.23, plus post-judgment interest. Doc. 21.

[2] Because the court finds that Wells Fargo is entitled to a judgment in its favor on its breach of contract claim, and Wells Fargo cannot obtain a double recovery, *see, e.g., Ex parte Barnett*, 978 So. 2d 729, 732 (Ala.2007) (citations omitted), the court does not address the unjust enrichment claim.

(3) Turney's nonperformance, and (4) damages. *See, e.g., Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quotation omitted).[3] The elements of a valid contract are "an offer and an acceptance, consideration, and mutual assent to the terms essential to the formation of a contract." *Id.* (quotation omitted). Mutual assent is generally shown by a signature on a written contract, *Bowen v. Security Pest Control, Inc.*, 879 So. 2d 1139, 1142 (Ala. 2003) (citation omitted), and, under Alabama law, a person who signs a contract is on notice of and bound by the terms of the contract, *Ex parte Leasecomm Corp.*, 870 So. 2d 1156, 1160 (Ala. 2003) (citation omitted). Finally, under Alabama's Statute of Frauds, "[e]very special promise to answer for the debt [or] default [] of another" is void unless it is in writing and signed by the guarantor. Ala. Code. § 8-9-2(3).

## A.

To prove the existence of a valid contract between the parties, Wells Fargo submits a copy of the Guaranty signed by Turney with an affidavit from Eddy Mullinax, a Vice-President in Wells Fargo's Credit Management Group, attesting to

---

[3] Because the court has diversity jurisdiction over this action, the court must apply Alabama substantive law and choice-of-law rules. *E.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In a breach of contract action, Alabama courts apply the law of the state where the contract was made, unless the parties choose a different state's laws to govern their agreement. *E.g., Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (citing *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)). The Guaranty was formed in Alabama, the Loan provides that it is governed by Alabama law, and the parties agree that Alabama law applies to Wells Fargo's claims. *See* doc. 26 at 6-7; 26-1 at 10; 28 at 5. Thus, the court applies Alabama law.

the authenticity of the Guaranty. Doc. 26-1 at 2-3, 47. Turney counters that this evidence does not prove the existence of a binding contract because Mullinax did not properly authenticate the Guaranty and, therefore, Wells Fargo failed to prove that Turney signed the Guaranty as required by Alabama's Statute of Frauds. *See* doc. 28 at 5. To that end, Turney attests that he does not recall meeting Mullinax and that he did not sign the Guaranty in Mullinax's presence. Doc. 28 at 11. But, critically, Turney does not deny signing the Guaranty. *See id.* Moreover, under Rule 803(6) of the Federal Rules of Evidence, business records are admissible,[4] and Rule 902(11) provides that documents meeting the requirements of Rule 803(6)(A)-(C) are self-authenticating and "require no extrinsic evidence of authenticity in order to be admitted . . . ." Fed. R. Evid. 803(6), 902(11).

Here, Mullinax attests that he has custody and control over the loan documents at issue, including the Guaranty, and that the documents are kept in the ordinary course of business:

> These records were made at or near the time of the event recorded by a person with knowledge of the event and charged with responsibility of recording such events. These records are kept in the ordinary course of Wells Fargo's regularly conducted business activity, which is Wells Fargo's customary practice.

---

[4] A business record is admissible if "(A) the record was made at or near the time by . . . someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . .; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

Doc. 26-1 at 2-3. This testimony establishes that the Guaranty meets the requirements of Rule 803(6)(A)-(C) because the rule requires only the testimony of a witness "who is knowledgeable about the procedures used to create the alleged business records," and the "witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1268 (11th Cir. 2015) (citations omitted). In that regard, Turney's testimony that he did not sign the Guaranty in Mullinax's presence does not call into question the trustworthiness of Mullinax's testimony or the circumstances surrounding the preparation of the Guaranty. Thus, the signed Guaranty is an admissible, self-authenticating business record that the court may consider. As a result, Turney's insistence that he did not sign the Guaranty in Mullinax's presence does not create a question of fact regarding whether he signed the Guaranty and whether the Guaranty is a binding contract between the parties.

**B.**

Next, Wells Fargo presents evidence that it fully performed its obligations under the Loan and Guaranty by disbursing the principal amount of the Loan, that Turney breached his obligation under the Guaranty by failing to pay the amount due under the Loan, and that it suffered damages as a result of Turney's breach. Doc. 26-1 at 3, 5-6. Turney does not directly dispute this evidence, but contends that his obligations under the Guaranty have not yet matured because Wells Fargo has not

tried to collect the collateral Choice Medicine pledged to secure the Loan. Doc. 28 at 6-7; *see also* doc. 26-1 at 10. This contention is unavailing because the Business Lending Disclosure expressly provides that a guarantor "waive[s] any right to require [Wells Fargo] to . . . proceed against any [c]ollateral or any person, including any [b]orrower [] before proceeding against any . . . guarantor . . . ." Doc. 26-1 at 36, 47. Turney cannot avoid the plain terms of the Guaranty by contending that Wells Fargo should first attempt to collect the collateral pledged by Choice Medicine before it can enforce the Guaranty. *See Gov't Street Lumber Co., Inc. v. AmSouth Bank, N.A.*, 553 So. 2d 68, 75 (Ala. 1989) ("[A]n absolute guaranty will be enforced according to its terms.") (citation omitted). Thus, Turney has not shown a question of material fact regarding the elements of Wells Fargo's breach of contract claim. As a result, based on the record before the court, Wells Fargo is entitled to summary judgment on the claim.

## C.

Finally, Wells Fargo asks the court to award it damages for the amount outstanding under the loan, plus pre and post-judgment interest, attorney's fees, and costs. Docs. 1; 26. The general rule for contract damages in Alabama is that "'the damages awarded in an action for breach of contract should be an amount sufficient to return the nonbreaching party to the position he would have occupied had the breach not occurred.'" *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 799 So. 2d

177, 183 (Ala. 2001) (quotation omitted). Moreover, "'[i]n Alabama, attorneys' fees are recoverable . . . when provided for in a contract . . . .'" *James v. James*, 768 So. 2d 356, 360 (Ala. 2000) (quoting *Eagerton v. Williams*, 433 So. 2d 436, 450 (Ala. 1983)).

Turning to the specifics here, Wells Fargo seeks the following damages:

(1) the principal amount owed of $74,000.00;

(2) prejudgment interest in the amount of $13,573.06 that accrued through February 7, 2020;

(3) additional prejudgment interest in the amount of $1,058.84;[5]

(4) post-judgment interest that accrues at a contractual daily rate of $10.28;

(5) attorneys' fees and expenses incurred through February 7, 2020 to enforce the Guaranty in the amount of $19,203.60; and

(6) attorneys' fees and expenses incurred beginning February 8, 2020 in connection with enforcing the Guaranty, including any post-judgment costs of collection.

*See* docs. 26 at 5; 26-1 at 6; 26-2. Wells Fargo substantiates these damages through Mullinax's affidavit, an affidavit from its attorney, and the Loan Documents. *See* docs. 26-1; 26-2. The Loan Documents provide in part that Turney "absolutely and unconditionally guarantees and promises to pay to [Wells Fargo] . . . [the] Guaranteed Indebtedness," which includes all of Choice Medicine's indebtedness

---

[5] This amount includes calculated by multiplying the daily interest rate of $10.28 by 103 days for the period from February 8 through May 20, 2020.

under the Loan. Doc. 26-1 at 30, 47. Mullinax attests that as of February 7, 2020, the total amount owed under the Loan was $87,573.06, including $74,000 in principal, and interest in the amount of $13,573.06, which continues to accrue at a daily rate of $10.28. Doc. 26-2 at 6. Turney does not dispute this evidence, challenge the reasonableness of the interest rate, or directly challenge the authenticity of the Loan Documents. *See* doc. 28. Thus, the record before the court establishes that Wells Fargo is entitled to damages in the amount of $88,631.90 for the unpaid principal due under the Loan and prejudgment interest.

With respect to Wells Fargo's request for attorney's fees, the Business Lending Disclosure, which is incorporated into the Guaranty, provides that Turney "agrees to pay upon demand all of [Wells Fargo's] costs and expenses incurred in connection with the enforcement of [Wells Fargo's] rights under the Guaranty, and the prosecution or defense of any action . . . relating to the Guaranty. Such costs and expenses include . . . [Wells Fargo's] attorney's fees . . . and legal expenses relating to any [] suit . . . relating in any way to the Guaranty, including . . . any anticipated post-judgment collection efforts . . . ." Doc. 26-1 at 33. Wells Fargo seeks $19,203.60 in fees and costs incurred through February 7, 2020.[6] Docs. 26-1 at 6; 26-2 at 5. To support its request for attorney's fees, Wells Fargo submits declarations stating that the fees and expenses claimed "were actually incurred to

---

[6] This amount consists of $17,353.45 in attorney's fees and $1,850.15 in costs. Doc. 26-2 at 5.

enforce or collect the [i]ndebtedness owed by [Choice Medicine] and Turney under the Loan Documents . . . ." Docs. 26-1 at 6; 26-2 at 3. Turney has not challenged this evidence or the reasonableness of the attorney's fees claimed. *See* doc. 28. And, having reviewed the requested fees and costs, doc. 26-2, the court finds that they are reasonable and necessary for the collection of the amount owed to Wells Fargo under the Guaranty. Thus, the record before the court establishes that Wells Fargo is entitled to attorneys' fees and costs in the amount of $19,203.60, plus reasonable fees and expenses incurred beginning February 8, 2020.

## IV.

Wells Fargo's motion for summary judgment, doc. 25, is due to be granted, and Wells Fargo is entitled to a judgment in its favor against Turney in the amount of $107,835.50, plus post-judgment interest accruing at the contractual daily rate of $10.28, and reasonable attorneys' fees and expenses incurred beginning February 8, 2020, including post-judgment costs of collection. A separate judgment will be issued.

**DONE** the 20th day of May, 2020.

                                                 _____
                                                 **ABDUL K. KALLON**
                                       UNITED STATES DISTRICT JUDGE